**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY , JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**May 21, 2014**

# In the Court of Appeals of Georgia

A14A0034. SMITH v. CITY OF ATLANTA.

MCFADDEN, Judge.

Javon Smith, formerly a firefighter with the City of Atlanta, filed this discretionary appeal from the superior court's decision upholding the termination of his employment. In reaching its decision to terminate Smith's employment, the city had departed from its written drug testing policy, and Smith argues that this departure violated his rights. But because Smith was given notice and an opportunity to be heard, he was not denied due process. Accordingly, we affirm the decision upholding his termination.

The relevant facts, which are largely undisputed, are as follows. The city required sworn employees of the Atlanta Fire Rescue Department, such as Smith, to

submit to random drug testing as part of its substance abuse policy. If an employee tested positive, his or her employment was terminated.

On December 15, 2011, the employees at Smith's fire station were selected to be tested. Smith gave a urine specimen at Caduceus Occupational Medicine. The specimen was divided between two containers. One container was sent to an independent lab for testing, and the results came back positive for marijuana metabolites. The city's certified medical review officer, a physician, received the results and contacted Smith to ask him if any medical reason explained the positive test result; Smith gave no reason. The medical review officer offered to have the second container of urine tested at a different independent lab. That test also came back positive for marijuana metabolites, and Smith was terminated. He appealed his termination to the City of Atlanta Civil Service Board which conducted a hearing and upheld the termination. Smith filed a petition for writ of certiorari to the superior court, which denied the petition and affirmed the administrative decision. We granted his application for discretionary appeal.

We review a superior court's decision reviewing an administrative agency's decision to determine whether the superior court has, in its own final ruling, committed an error of law. *Bd. of Regents of the Univ. System of Georgia v. Hogan*,

2

298 Ga. App. 454 (1) (680 SE2d 518) (2009). Smith argues that the superior court erred by upholding his termination because the Fire Rescue Department's failure to administer a rapid screening test in breach of its random drug testing policy violated his due process rights. At the time of Smith's testing, the Fire Rescue Department's Random Drug and Alcohol Testing Policy provided:

> For a[n] employee who has an initial positive result on a drug test, a second test will be conducted. If that result is positive, the [medical review officer] will contact the person tested to discuss the results. If the person cannot verify that the results are due to a valid medical reason (for example, appropriate use of prescription medication), the [medical review officer] will offer a split specimen (a test of [a] portion of the original specimen). The employee must contact the [medical review officer] within 72 hours after to request the split specimen test; the test must be conducted within 14 days of the date the person was notified of the initial positive results.

Under this policy, two tests were administered simultaneously on the day of testing: the employee's urine was subjected to a rapid screening test, and at the same time, a portion of the urine was sent to a laboratory for testing. If the laboratory test returned a positive result, the employee could request that a second portion of urine (the "split specimen") be sent to a second laboratory for testing.

3

In spite of the written policy in place at the time of Smith's random drug testing, he was not given the rapid screening test. Smith argues that this departure from the written policy deprived him of a check on the reliability of the test results that led to his termination. The fire chief testified, on the other hand, that he had eliminated the rapid screening test because he was concerned that it made the drug policy unfair. He elaborated that in an unrelated proceeding, a firefighter had tested negative on the rapid screening test but positive on the simultaneous laboratory test; since the rapid screening test had returned a negative result, the firefighter's urine should not have been subjected to additional testing. While Smith argues that eliminating the rapid screening test deprived him of a chance to pass a test, the fire chief maintained that eliminating that test meant that employees had one less chance to fail. He confirmed that at the time of Smith's testing, the written policy was in the process of being revised to reflect the new practice.

It is not for us to decide whether the better practice is to include or eliminate the rapid screening test. Our decision turns on due process. In order to satisfy due process, a public employee with a property interest in continued employment must be given notice and an opportunity to be heard before he may be deprived of that property interest. *Camden County v. Haddock*, 271 Ga. 664, 666 (1) (523 SE2d 291)

4

(1999). The parties do not dispute that Smith had a property interest in his job and was entitled to due process. The issue, therefore, is whether he was given adequate notice and an adequate opportunity to be heard to satisfy due process.

First we conclude that because the new random drug testing policy had not yet been finalized or distributed to employees, the former, written policy was effective at the time of Smith's drug test. See id. at 665 (1) (applying county's 1989 personnel policy because there was no evidence that county had distributed copies of its 1994 policy to county employees). And it is undisputed that Smith was not given the rapid screening test, which previously had been given in accordance with the written policy. But an employer's violation of an internal policy does not necessarily amount to a due process violation:

> [T]he adequacy of due process is governed not by personnel manuals [or internal policies] but by case law interpreting the federal and state constitutions, which only require that the employee (even if later) be notified and given an opportunity to be heard. As long as the requirements of due process are met, the employer's failure to follow all the requirements in the manual [or policy] does not [constitute a denial of due process].

*Bd. of Regents*, supra, 298 Ga. App. at 457 (1) (citation and punctuation omitted). See also *Mangels v. Pena*, 789 F.2d 836, 838 (10th Cir. 1986) ("A failure to comply with

5

state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause."); *Bowens v. North Carolina Dept. of Human Resources*, 710 F.2d 1015, 1019 (III) (4th Cir. 1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process. When a property interest has been created, the due process clause, not state regulations, defines what process is constitutionally mandated.") (citations omitted).

And here, it is undisputed that Smith was given multiple notices and opportunities to be heard. The chief medical officer contacted Smith with the positive test result and discussed with him whether any medical reason explained it. He offered to have the split specimen tested, an offer Smith accepted. Smith was given written notice of his termination and the reasons for that termination. He had a hearing before the civil service board at which he was represented by counsel and was given the opportunity to call witnesses on his own behalf and to cross-examine witnesses testifying against him. Finally, Smith pursued certiorari in the superior court. Because Smith was afforded the opportunity to dispute his test results and consequent termination, the failure to give him a rapid screening drug test did not

6

deny him due process. See *Men of Color Helping All Society, Inc. v. City of Buffalo*, 529 Fed. Appx. 20, 24 (2d Cir. 2013) (holding that even if city violated procedures in its drug testing policy, firefighters were not denied due process because they could dispute the fairness and accuracy of their test results and consequent terminations during pre-termination hearing, grievance process, and in state court).

*Judgment affirmed. Andrews, P. J., and Ray, J., concur.*